UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTINE MOORE,<br><br>  Plaintiff,<br><br>v.<br><br>MERCHANTS & MEDICAL CREDIT CORPORATION, INC.,<br><br>  Defendant. | Case No. 3:21-CV-01724-MEM<br><br>JUDGE MALACHY E. MANNION |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**I.      <u>INTRODUCTION</u>**

Though simple on its face, this Fair Debt Collection Practices Act ("FDCPA") case raises important questions of statutory interpretation as it relates to MMCC's lawful use of an outsourced service provider to print and mail debt correspondence to consumers. Plaintiff asserts that MMCC, a debt collector, cannot outsource these tasks because transmission of an encrypted data file to a service provider containing the information needed to complete such tasks, qualifies as a prohibited communication under 15 U.S.C. § 1692c(b), which prohibits debt collectors from communicating debt information to a third party, in connection with the collection of any debt, except in limited circumstances. Plaintiff is wrong.

Plaintiff's novel argument is contrary to the text of § 1692c(b). Practically speaking, outsourced service providers such as Hatteras perform the same role that telephone operators, telegram clerks and even internet service providers do. They serve as mediums *through which* communications are delivered from one party to another. Section 1692c(b) does not prohibit MMCC from using a medium to communicate with Plaintiff.

1

Apart from producing an absurd result, interpreting § 1692c(b) to prohibit incidental conveyances of information to outsourced service providers also runs contrary to the rest of the statute. The text of the FDCPA makes clear that Congress specifically contemplated incidental conveyances of debt information through mediums in the ordinary course of business. Therefore, treating incidental conveyances to mediums as actionable communications also undermines congressional intent.

Plaintiff's bizarre interpretation of § 1692c(b) also ignores the fact that the agency charged with interpretation and enforcement of the FDCPA and the Final Rule (Regulation F) has expressly recognized and condoned the wide-spread use of outsourced print and mail providers by debt collectors regulated under the Act. Indeed, the use of outsourced vendors, having specialized expertise performing certain tasks, benefits debt collectors and consumers alike. Prohibiting the use of specialized, outsourced providers serves no legitimate purpose except to single out and competitively disadvantage scrupulous debt collectors – an outcome directly at odds with one of the stated purposes of the FDCPA. §1692a(e).

Absent any evidence that the data shared by MMCC was used by or accessed by any person outside of Hatteras, or delivered to any person other than Plaintiff, Plaintiff cannot establish that MMCC violated § 1692c(b). MMCC is therefore entitled to judgment in its favor as a matter of law.

## II.  PROCEDURAL HISTORY

On or about September 15, 2021, Plaintiff filed this action in the Court of Common Pleas for Luzerne County. On October 7, 2021, MMCC removed the case to this Court based on federal question jurisdiction. ECF 1: Notice of Removal. MMCC filed its Answer and Affirmative Defenses to Plaintiff's Complaint denying any wrongdoing or liability to Plaintiff.

ECF 6: Answer and Jury Demand. The parties have exchanged written discovery and have taken depositions of each other. Discovery in this case is now closed and the relevant facts underlying this action are not seriously in dispute.

### III. STATEMENT OF FACTS

MMCC incorporates its separate Statement of Undisputed Material Facts as if set forth herein.

### IV. QUESTION PRESENTED

The central question before this Court is whether a debt collector's transmission of an encrypted, electronic data file to an outsourced print and mail vendor containing the information needed to populate, print and mail correspondence to a consumer, is permitted under the FDCPA?

> Plaintiff answers "no."
> MMCC answers "yes."
> The Court should answer, "yes."

### V. APPLICABLE LAW

A. Summary motions under Fed. R. Civ. P. 56

"Summary judgment should be granted where no genuine issue of material fact exists for resolution at trial and the moving party is entitled to judgment as a matter of law." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992) ("*Big Apple*"), citing Fed. R. Civ. P. 56(c). The party seeking summary judgment under Rule 56 has the initial burden of identifying the legal basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Importantly, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id., Evankavitch v.*

*Green Tree Servicing, LLC*, 793 F.3d 355, 367-68 (3d Cir. 2015) (discussing the "default rule" that the plaintiff bears the burden of proving their FDCPA claim while the defendant bears the burden of proving any exceptions). If defendant can show that the plaintiff lacks evidence concerning an essential element of the plaintiff's claim, plaintiff must come forward with admissible evidence and facts to show that there is a genuine issue for trial. *Big Apple*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). Otherwise, the court must enter summary judgment in favor of defendant as the moving party.

      B.  <u>The Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq*</u>.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692a(e). One section of the Act, § 1692c, prohibits certain communications; another section, § 1692d, prohibits certain conduct, and a third section, § 1692e, prohibits certain methods. *Id*.

Notwithstanding the broad sweep of the Act, the FDCPA does not apply to every action taken by a debt collector. *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 384-85 (7th Cir. 2010)). At bottom, the specific action (or omission) complained about must have been taken in "connection with the collection of any debt" to be actionable under the FDCPA regardless of the type of violation. *Id*.; *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 265 (3d Cir. 2013) (citations omitted).

**VI.**  <u>**ARGUMENT**</u>

Section 1692c(b) does not prohibit MMCC from using a medium to print and mail debt correspondence to consumers. Sharing incidental information with a medium hired to perform

these functions on behalf of MMCC does not count as an actionable communication to an unauthorized "person" under the Act. This common-sense conclusion finds support in the plain language of the Act and is shared by the federal agencies charged with regulating debt collectors under the Act.

Plaintiff has also testified that she has no evidence whatsoever that the information shared with Hatteras was in fact accessed, used or delivered to any "person." Accordingly, while 1692c(b) prohibits a debt collector from delivering Plaintiff's information to an unauthorized recipient, Plaintiff has not and cannot show that her "private" information was delivered to anyone other than Plaintiff.

Accordingly, this Court should grant MMCC's motion and enter judgment for MMCC.

### A. MMCC DID NOT ENGAGE IN AN ACTIONABLE "COMMUNICATION" WITH HATTERAS IN VIOLATION OF §1692C(B)

Plaintiff alleges that MMCC's transmittal of an encrypted data file to Hatteras to print and mail correspondence delivered to Plaintiff violates § 1692b(c), which provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, **a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.**

§ 1692b(c) (emphasis added).

Plaintiff testified that she was damaged by MMCC's use of Hatteras – a medium – to deliver private debt information to her. Plaintiff insists that judgment should be entered in her favor and against MMCC based on the language of § 1692c(b) and nothing more.

5

Plaintiff's narrow interpretation of § 1692b(c) misreads the actual language used in this section and the rest of the FDCPA, disregards persuasive authority from the FTC and CFPB condoning the use of service providers to convey debt correspondence to consumers, and ultimately produces absurd results. Admittedly, most courts have refrained from analyzing the merits of such claims, altogether, for lack of Article III standing. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 2022 WL 4102824 (11th Cir. Sept. 8, 2022). However, no appellate court examining the use of mail and print vendors has ever concluded that a debt collector's use of an outsourced service provider to print and mail debtor correspondence violates § 1692b(c), *per se*. *Id*. Because the Act contemplates and allows collectors to convey information through mediums, such as Hatteras, without running afoul of the law, MMCC is entitled to judgment as a matter of law.

1. "Mediums" and "Persons" Are Mutually Exclusive

The FDCPA defines "communication" to mean the conveying of information regarding a debt directly or indirectly **to any person through any medium**. § 1692a(2) (Emphasis added). The words "person" and "medium" are not defined elsewhere in the Act, but their use in this context is clear – they are mutually exclusive. The phrase "any person" does not include the medium through which information is conveyed; if it did, the phrase "through any medium" would be unnecessary. *Id*.

Importantly, the FDCPA's definition of communication contemplates two recipients of conveyances –those *through whom* such conveyances are passed (mediums) and those *to whom* conveyances are made (persons). The phrase "to any person" refers to the target or recipient of the conveyance, whereas the phrase "through any medium" refers to the channel or conduit that carries the conveyance. Both mediums and persons receive information; however, a medium

6

releases the information by delivering it to the person. Thus, read in context, the word "person" excludes the "medium" that conveys the information.

"Unless the context indicates otherwise, the words of a statute must be interpreted in accordance with their ordinary meaning. *United States v. Knox,* 32 F.3d 733 (3d Cir. 1994). Merriam-Webster defines "medium" as "a means of effecting or conveying something…such as a channel or system of communication."[1] The FDCPA explicitly recognizes that both people and things can serve as mediums during the debt collection process, such as when an individual serves legal process, §1692a(6)(D), when a collector uses a telephone, (§1692a(7), §§1692d(5)-(6), and §1692f(5)), and when a collector sends a telegram, (§1692b(5), §1692f(5), and §1692f(8)). The Fair Trade Commission has also issued commentary to this effect, explicitly recognizing that the transmission of debt-related information through *mediums* such as telephone operators and telegraph clerks does not violate §1692c(b). *Statement of General Policy or Interpretation Staff Commentary on the Fair Debt Collections Practices Act, 53 FR 50097-02*. As the FTC plainly recognized, such conveyances are incident to the use of mediums and are not the kind of conveyances that offend the privacy rights of consumers or violate the FDCPA. By authorizing the use of process servers, phone calls, and telegrams to convey information, the plain language of the statute, read as a whole, confirms that conveyance of debt information *through* such mediums does not violate §1692c(b).

    2. <u>Section 1692c(b) Prohibits Communications with Unauthorized Persons, Not Mediums</u>

Section 1692c(b) prohibits communications with unauthorized persons, not the conveyance of information to persons *through a medium*. Unlike the language used §1692(a)(2),

---

[1] Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/medium. Accessed 12 Mar. 2023.

this section does **not** say "a debt collector may not communicate with any person **through any medium** …" The word "medium" does not appear anywhere in this section signaling that mediums are not included in §1692c(b)'s prohibition. Had Congress truly intended to prohibit communications *through mediums*, the language used in §1692c(b) would have explicitly said so. Instead, Congress presumably recognized that debt collectors necessarily need to convey debt-related information through mediums and omitted the term "medium" from the scope of §1692c(b).

This conclusion is further bolstered by the fact that none of the "persons" expressly mentioned in §1692c(b) – the consumer's attorney, the creditor, the creditor's attorney, the debt collector's attorney, or a consumer reporting agency – are mediums, either. Each of the persons enumerated in §1692c(b) serve as the object or target of the collector's conveyance, in the place of the consumer. As a medium tasked with delivering the conveyance to such persons, Hatteras occupies a different position.

        3.   <u>Hatteras Is the Medium, Not the Object of the Conveyance</u>

MMCC's secure transmission of an encrypted, electronic data file to Hatteras to print and mail correspondence to Plaintiff, as and when directed by MMCC, does not transform MMCC's incidental conveyance of the information necessary to complete this assigned task into a violation of §1692c(b).

Section §1692c(b) prohibits disclosures to unauthorized persons, not mediums. The word "person" is used extensively throughout the Act. Whenever "person" is used in the context of conveying information or engaging in some act, it refers to the object or target of the conveyance

or act.[2] Words used throughout a statute are presumed to have the same meaning unless the statutory text specifically indicates otherwise. *IBP, Inc. v. Alvarez* , 546 U.S. 21, 34 (2005).

Here, Hatteras was not the object or target of MMCC's conveyance. Hatteras was merely the channel or medium through which the conveyance was delivered to Plaintiff, akin to a process server, telephone operator, or telegram messenger similarly tasked with conveying information to a recipient. Thus, MMCC did not violate the FDCPA by using Hatteras, as a medium, to dispatch a message to Plaintiff.

Print and mail vendors are the modern day equivalent of a telegram operator. In fact, a print and mail vendor, such as Hatteras, is functionally no different than an internet service provider tasked with delivering email messages to designated recipients. Delivering a message to a person through an internet service provider is legally indistinguishable from using a print and mail vendor to deliver the same information through the postal system. Both providers are channels or mediums through which information is transmitted to a designated recipient. Thus, like all other mediums, Hatteras is excluded from the prohibition set forth in §1692c(b).

### B. REGULATION F AND RELATED CFPB GUIDANCE ALSO CONFIRM THAT USE OF AN OUTSOURCED PRINT AND MAIL VENDOR DOES NOT VIOLATE THE FDCPA

Title X of the Dodd–Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. §§ 5481 *et seq.,* created the Consumer Financial Protection Bureau to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." ; *Id.*,§ 5491(a), see also, *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 686-87 (D.C. Cir. 2015). Under Title X, the CFPB is to "implement and ... enforce Federal

---

[2] The only exception is found in §1692a (6), which excludes "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt" from the definition of "debt collector."

consumer financial law," including the Fair Debt Collection Practices Act. *Id*., §§ 5511(a) and 5481(12). To carry out these duties, the Bureau has rulemaking, supervisory, investigatory, adjudicatory, and enforcement authority (*Id*., §§ 5512(b), 5514–5516, 5562–5564), including the authority to file civil enforcement actions against regulated parties. *Id*., 5564; *see also* 15 U.S.C. § 6105(d). Suffice it to say, CFPB guidance regarding the use of print and mail vendors in the debt collection space warrants substantial consideration.

On November 30, 2020, the CFPB issued final rules regulating debt collectors. Debt Collection Practices (Regulation F), 85 FR 76734. Not long after, the CFPB issued supplemental rules focused on the content and form of debt collector communications. 86 FR 5766 (January 19, 2021). The rules became effective on November 30, 2021. 85 FR 76734, 76863.

Prior to issuing the final rules, the CFPB studied the debt collection industry in depth, including the use of print and mail vendors by debt collectors. More than 85% of debt collectors surveyed by the CFPB confirmed their use of a print and mail vendors to send debt correspondence to consumers. 86 FR 5766, 5845, fn. 446. Despite this knowledge, the CFPB declined to use it rulemaking power to prohibit the use of print and mail vendors in the final rules. Instead, the CFPB acknowledged the widespread use of mail and print vendors by industry participants. The Bureau determined that a debt collector may use a vendor's mailing address to satisfy its statutory obligation to disclose its mailing address to consumers. See, 12 C.F.R. §1006.34(c)(4)(iii); also, 86 FR 5766, 5801. The Bureau also contemplated and confirmed that consumers may transmit disputes and information requests *regarding their debts* to such vendors if the debt collector so indicates in its correspondence. See, 86 FR 5766, 5817. Though not expressly stated, the CFPB tacitly recognized that by using a vendor's mailing address as its

own, the debt collector is acting *through the vendor* to receive consumer correspondence. This arrangement embodies the principal-agent relationship. *Restat 3d of Agency, § 1.01*.

There is no indication whatsoever that Congress intended to prohibit a debt collector from acting *through agents* in the ordinary course of business. Prohibiting the use of agents by debt collectors serves no purpose. Indeed, interpreting § 1692c(b) to prohibit the use of mediums or agents would only serve to single out and, therefore, competitively disadvantage scrupulous debt collectors, such as MMCC, who have elected to leverage the specialized expertise of providers like Hatteras to comply with existing law.

### C. PLAINTIFF HAS NO EVIDENCE THAT HER INFORMATION WAS DELIVERED TO ANY "PERSON" BESIDES PLAINTIFF

A collector may use a medium to convey information to an authorized "person" without violating §1692c(b). By the same stroke, a collector cannot deliver information to an unauthorized person regardless of how or through whom the information is delivered to such person.

Here, Plaintiff's Complaint contains no factual allegations that Plaintiff's information was accessed, viewed, or delivered to *any* unauthorized person. Plaintiff testified unequivocally that she cannot identify anyone, anywhere, who viewed or obtained her private information.

```
Q (By Ms. Olson) Okay. And as you sit here today, do you
have any information that your information was shared
with anyone in particular?
MR. FREEMAN: Object to form, but you can answer.
A I don't.
Q (By Ms. Olson) Okay. Would it be fair to say that but
for someone telling you this, you independently don't
have any reason to believe your information has been
shared publicly?
MR. FREEMAN: Object to form, but you can answer.
A Correct.
```

See, Plaintiff's Deposition Transcript at 27:12-24.

11

The record lacks such evidence because no such evidence exists. Having failed to offer any evidence that MMCC disclosed her information to any "person", and essential element of her claim under §1692c(b), Plaintiff has not and cannot establish that MMCC violated the FDCPA. For this reason, too, MMCC is entitled to entry of judgment in its favor.

## VII. CONCLUSION

Section 1692c(b) does not prohibit MMCC from using a medium to communicate with Plaintiff. Plaintiff's narrow interpretation of the statutory language misreads the actual language used in §1692c(b) and other parts of the FDCPA, disregards persuasive authority from the FTC and CFPB condoning the use of service providers to convey debt correspondence to consumers, and ultimately produces absurd results. For these reasons, the Court should grant MMCC's motion and enter summary judgment in its favor.

Dated: March 13, 2023　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ Charity A. Olson
　　　　　　　　　　　　　　　　　　　　　　Charity A. Olson, *Pro Hac Vice*
　　　　　　　　　　　　　　　　　　　　　　OLSON LAW GROUP
　　　　　　　　　　　　　　　　　　　　　　P.O. Box 64
　　　　　　　　　　　　　　　　　　　　　　Hartland, MI 48353
　　　　　　　　　　　　　　　　　　　　　　(734) 255-6908
　　　　　　　　　　　　　　　　　　　　　　colson@olsonlawpc.com

## CERTIFICATE OF SERVICE

I, Charity A. Olson, hereby state that on March 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Charity A. Olson*
　　　　　　　　　　　　　　　　　　　　　　Charity A. Olson