UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTINE MOORE,<br><br>Plaintiff,<br><br>v.<br><br>MERCHANTS & MEDICAL<br>CREDIT CORPORATION, INC.,<br><br>Defendant. | Case No. 3:21-CV-01724-MEM<br><br>JUDGE MALACHY E. MANNION |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff acknowledges that her legal theory is premised on an Eleventh Circuit decision that is no longer good law anywhere. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021) ("*Hunstein I*") opinion vacated and superseded on reh'g, 17 F.4th 1016 (11th Cir. 2021), reh'g en banc granted, opinion vacated, 17 F.4th 1103 (11th Cir. 2021) (*Hunstein II*). Plaintiff also readily concedes that there was "*no* discussion regarding the merits of the claim" in *Hunstein II*. ECF 28: Plaintiff's Brief in Support of her Motion for Summary Judgment at pg. 2.

1

Despite this nothing burger, Plaintiff hopes that *dicta* plucked from the various *Hunstein* rulings provide a sufficient legal basis for this court to conclude that MMCC's contacts with an outsourced service provider to print and mail correspondence to Plaintiff – and nothing more – violate § 1692c(b) as a matter of law. But neither the Third Circuit, nor any other circuit for that matter, has ever concluded that a debt collector's incidental contacts with a service provider performing routine business functions on its behalf, qualifies as a violation of the FDCPA.

This court should decline Plaintiff's invitation to reach a conclusion that is plainly at odds with both the letter and the spirit of the FDCPA under the auspices of consumer protection. This is particularly true in the face of Plaintiff's admission that she cannot identify any person (by name), at Hatteras or anywhere else, that accessed, used, or retained her personal information.

Section 1692c(b) does not prohibit MMCC from using a medium to communicate with Plaintiff. Accordingly, the FDCPA has not been violated. The court should deny Plaintiff's motion and grant summary judgment for Defendant.

## II.     MMCC DID NOT VIOLATE THE FDCPA

The FDCPA does not prohibit a debt collector from sharing limited information with an outside provider tasked with performing routine business functions on behalf the debt collector. To conclude, otherwise, creates conflicts with § 1692c(b) and various other provisions of the Act. Importantly, this conclusion also ignores FTC Staff Commentary clarifying that incidental contact with employees of phone and telegraph companies is permissible to the extent "necessary to enable the collector to transmit [a] message to, or make contact with, a consumer." FTC, Statements of General Policy or Interpretation Staff Commentary on the FDCPA, 53 Fed. Reg. 50097, 50104 (Dec. 13, 1988). At bottom, the FDCPA's "ban on communicating with third-parties … is meant to protect debtors from harassment, embarrassment, loss of job, and denial of a promotion." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740,743 (6th Cir. 2015); *Marx v. General Revenue Corp.*, 668 F.3d 1174, 1183 (10th Cir. 2011). None of those concerns are implicated here.

### A.     **The encrypted data file that MMCC shared with Hatteras was not a "communication"**

Plaintiff alleges that MMCC "communicated" with Hatteras about Plaintiff's debt in violation of § 1692c(b) by sending an encrypted data file

3

to Hatteras containing only the information necessary to print and mail correspondence to Plaintiff on MMCC's behalf. However, Plaintiff's assertion that MMCC's conveyance of information to Hatteras was "a communication made in connection with the collection of [a] debt" is a legal conclusion premised on a defined term ("communication") that is not even used in § 1692c(b). This sweeping conclusion also ignores the inescapable truth that the FDCPA specifically contemplates the sharing of information with both mediums and persons peripheral to the collection efforts in the ordinary course of business. See, for e.g., *Johnson-Gellineau v. Stiene & Assocs., P.C.*, No. 19-2236-cv, at *7 (2d Cir. Nov. 17, 2020) ("[Plaintiff first asserts that the Attorney Defendants violated 15 U.S.C. § 1692c(b) by communicating with the Dutchess County clerk in connection with foreclosure proceedings. We agree with the District Court that such communications do not violate § 1692c(b), which prohibits debt collectors from communicating with third parties in connection with collection of the debt without the prior consent of the debtor or the express permission of a court of competent jurisdiction; *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) ("[I]t would be odd if the Act empowered a debt-owing consumer to stop the

'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt.").

The FDCPA defines "communication" to mean the conveying of information regarding a debt directly or indirectly to any person through any medium. § 1692a(2) (Emphasis added). The words "person" and "medium" are not defined elsewhere in the Act, but their use in this context is clear – they are mutually exclusive. The phrase "any person" does not include the medium through which information is conveyed; if it did, the phrase "through any medium" would be unnecessary. *Id*.

Importantly, the FDCPA's definition of communication contemplates two recipients of conveyances –those through whom such conveyances are passed (mediums) and those to whom conveyances are made (persons). The phrase "to any person" refers to the target or recipient of the conveyance, whereas the phrase "through any medium" refers to the channel or conduit that carries the conveyance. Both mediums and persons receive information; however, the medium dispatches the information to the person. Read in context, the word "person" excludes the "medium" that conveys the information, rendering Plaintiff's § 1692c(b) claim dead on arrival.

Undeterred, Plaintiff cites various non-binding, lower court opinions examining threshold jurisdictional and pleading issues to bolster her conclusion that the encrypted data file is a "communication" under the Act. *Khimmat v. Weltman, Weinberg and Reis Co., LPA*, 585 F. Supp.3d 707 (E.D. Pa. 2022); *Jackin v. Enhanced Recovery Co., LLC*, --- F. Supp.3d ---, 2022 WL 2111337 (E.D. Wash. June 10, 2022), and *Ali v. Credit Corp. Sols., Inc.*, 2022 WL 986166 (N.D. Ill. Mar. 30, 2022). However, Plaintiff's reliance on these decisions is misplaced for several reasons.

First, as every lawyer knows, a Fed. R. Civ. P. 12(b)(1) motion asks whether plaintiff has sustained a concrete injury traceable to defendant's actions and capable of redress in federal court. The court is not deciding the merits of a claim. The only question before the court is whether subject matter jurisdiction exists to litigate the case in federal court. If jurisdiction exists, the case continues.

Similarly, a Fed. R. Civ. P. 12(b)(6) motion asks whether plaintiff has stated a plausible claim, and nothing more. Like a 12(b)(1) motion, the court is not deciding the merits of the case. Rather, the court is tasked with determining whether the allegations in the complaint, if true, could lead the court to infer that the defendant is liable to plaintiff under the legal theory

articulated in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). If the claims are legally plausible, plaintiff gets an opportunity to prove the merits of his or her case.

Except for one case, all the cases that Plaintiff relies upon in her response reached conclusions unrelated to merits of the plaintiff's claim. The holding in *Hunstein II* was limited to Article III standing. *Jackin* and *Ali* involved motions to dismiss under Fed. R. Civ. P. 12(b)(6). Therefore, the court should not afford any persuasive value to these decisions regarding the *merits* of Plaintiff's §1692c(b) claim in this case.

That leaves *Khimmat,* where the Court denied defendant's Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, concluding that the FDCPA prohibits communications with letter vendors. Still, the court's reasoning in *Khimmat* was flawed in several parts. Consequently, *Khimmit* cannot be squared with the plain text of the statute and surely produces absurd results.

The *Khimmat* Court acknowledged that messages are often conveyed to persons through mediums. *Khimmat*, 585 F. Supp. 3d 707, 711 (E.D. Pa. 2022). However, the Court concluded that the word

7

"medium'', as used in the context of "communication", "most likely refers to the mechanical means of communication, rather than to an intermediary that might (or might not) be present." *Id*.

This extremely narrow view of the term "medium" cannot withstand scrutiny and is seemingly premised on the Court's and/or Weltman's own mischaracterization of the persons excluded from the reach of § 1692c(b) as "mediums", which is fundamentally wrong. The Court reasoned that "if a consumer's attorney were a medium, it would render § 1692c(b)'s 'with any person other than' clause unintelligible." *Id*. True enough. The persons excluded from § 1692c(b) are persons, *not* mediums. But this does *not* mean that mediums cannot be persons. Indeed, the FDCPA explicitly recognizes that *both* people and things can serve as mediums during the debt collection process, such as when a person serves legal process, § 1692a(6)(D), a collector uses a telephone to make calls, (§ 1692a(7), §§ 1692d(5)-(6), and § 1692f(5)), or a collector utilizes a clerk to dispatch a telegram, (§ 1692b(5), § 1692f(5), and § 1692f(8)). Use of a translator or an internet service provider is no different.

8

There is simply no statutory basis to conclude that the term "medium" excludes persons, as the Court held in *Khimmet*. This flawed analysis set the stage for the next flaw in the Court's decision.

### B. MMCC's contact with Hatteras was not made "in connection with" the collection of any debt

MMCC does not dispute that the phrase "in connection with the collection of a debt" is broad. But this phrase has limits, as the Third Circuit has consistently recognized. *Simon v. FIA Card Services, N.A.*, 732 F.3d 259 (3d Cir. 2013); *McLaughlin v. Phelan Hallinan & Smieg, LLP*, 756 F.3d 240 (3d Cir. 2013); cert denied, 135 S.Ct. 487 (2014); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3rd Cir. 2011).

Under Plaintiff's sweeping view of the Act, debt collectors exist solely to collect debts so virtually any communication with another person in the ordinary course of business fits the bill. Thus, courts should conclude that almost every action taken by a debt collector is necessarily done "in connection with the collection of a debt." This limitless interpretation of the statutory text is a bridge too far and would prevent debt collectors from using any service provider in the ordinary course of business. It would also halt collection lawsuits, altogether, which necessarily involve the

transmission of information to court clerks and other personnel performing ministerial tasks related to the legal process.

"Statutes must be [] construed, if possible, so that absurdity and mischief may be avoided." *In re Rouss*, 221 N.Y. 81, 91 (1917); see also John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387 (2003)). But this outcome is precisely what would occur if Plaintiff is allowed to use the FDCPA as a sword for her own enrichment, as opposed to a shield against abusive collection practice.

While the Third Circuit has not adopted a bright line rule identifying the acts which constitute a communication (or not), it has routinely considered the factors laid out by the Seventh Circuit in *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) to identify what qualifies as an actionable "communication" under the Act. See *Simon*, 732 F.3d at 266; also, *McLaughlin*, 756 F.3d at 345. Courts look to whether the challenged conduct includes a demand for payment, the relationship between the parties, and the purpose and context of the communication. *Gburek,* 614 F.3d at 386. As *Simon* noted, "a letter that is not itself a collection attempt, but that aims to make … such an attempt more likely to succeed has the requisite connection." *Simon* at 266. See, also, *Grden v. Leikin Ingber &*

*Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (the "animating purpose" for the communication must be motivating the consumer to pay).

Again, the *Khimmat* Court wrongly concluded that the prohibition in § 1692c(b) applies to debt communications regardless of whether the communication seeks to motivate a consumer to pay a debt. *Khimmat*, 585 F. Supp. 3d 707, 712 (E.D. Pa. 2022). The Court reasoned that communication with certain persons excluded under § 1692c(b), such as the creditor, the creditor's attorney, a consumer reporting agency, or the debt collector's attorney "will not demand payment or motivate a consumer to pay a debt." *Id*. If they did, the Court reasoned, the exceptions set forth in § 1692c(b) would be "superfluous". *Id*.

The problem with this analysis is that a collector's communications with a credit reporting agency *do* tend to motivate payment. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n. 5(6th Cir. 2008) (reporting a debt to a collection agency constitutes "collection activity" under the FDCPA); see also *Sullivan v. Equifax, Inc.*, 2002 WL 799856, *4 (E.D. Pa. Apr. 19, 2002) ("… reporting a debt to a credit report agency can be seen as a communication in connection with the collection of a debt."). Communications to a consumer's attorney have the same end in mind -

11

payment of the debt. See, *Simon*, 732 F.3d at 267 (letters sent to the consumer's bankruptcy counsel challenging the dischargeability of a debt and possible acceptance of a reduced amount are communications); *Allen,* 629 F.3d 364, 368 n.5 (3rd Cir. 2011) (letters sent to plaintiff's attorney in the context of a foreclosure action are communications). Thus, the Court's conclusion is not borne out in practice. For this reason, too, the Court should decline to adopt the holding in *Khimmat.*

To be sure, the alleged communication in this case is easily distinguishable from the actionable communications found in *Simon*, *McLaughlin* and *Allen*. The encrypted data file transmitted to Hatteras did not contain a demand for payment; it contained raw data and nothing else. Also, MMCC and Hatteras had a business relationship involving the outsourcing of ministerial tasks, as and when directed by MMCC. This relationship was not premised on debt collection; it was premised on Hatteras' completion of discrete tasks for MMCC. Thus, Hatteras was not only a "medium" of communication – Hatteras was an agent of MMCC. *Covington v. Int'l Ass'n of Approved Basketball Offs*., 710 F.3d 114, 120 (3d Cir. 2013) (when one party consents to have another act on its behalf,

with the principal controlling and directing the actions, an agency relationship exists).

On this front, MMCC *has* established that MMCC controlled and directed the actions of Hatteras with respect to all letters printed and mailed on behalf of MMCC. (Church Declaration, ¶¶ 10-12, 19); compare *Khimmat*, 585 F. Supp. 3d 707, 713 (E.D. Pa. 2022) ("[Defendant] has not asserted much less established that it directed or had control over the manner in which the letter vendor printed and mailed its letters"). Thus, the "relationship" factor also favors MMCC position.

Finally, using Hatteras to print and mail correspondence on behalf of MMCC would *not* make payment from Plaintiff any more likely than if MMCC had printed and mailed the same exact letters from its own office. Plaintiff has not and cannot argue otherwise.

It cannot be said, therefore, that MMCC's contacts with Hatteras were "taken in collection with the collection of a debt" as that phrase is used in the FDCPA and understood by courts tasked with determining whether the requisite connection exists. Accordingly, Plaintiff's claim fails.

## III.     CONCLUSION

Plaintiff's bizarre interpretation of § 1692c(b) leads to absurd results plainly at odds with the letter and spirit of the Act. The FDCPA does not prevent incidental communications between a debt collector and a service provider retained to perform routine business tasks on its behalf. The Court should, therefore, deny Plaintiff's motion and grant summary judgment in favor of MMCC.

Dated: March 23, 2023                                Respectfully Submitted,

/s/ Charity A. Olson
Charity A. Olson, *Pro Hac Vice*
OLSON LAW GROUP
P.O. Box 64
Hartland, MI 48353
(734) 255-6908
colson@olsonlawpc.com