## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Justine Moore,<br>　　　　　　　Plaintiff | Docket No. 3:21-cv-01724-MEM |
| | (Judge Malachy E. Mannion) |
| 　　v. | |
| | ELECTRONICALLY FILED |
| Merchants & Medical Credit<br>Corporation, Inc.,<br>　　　　　　　Defendant | |

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*s/ Brett Freeman*
Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff
FREEMAN LAW
210 Montage Mountain Rd.
Moosic, PA 18507
P: (570) 589-0010
F: (570) 456-5955
brett@freeman.law

Table of Contents

Table of Contents ......................................................................ii

Table of Authorities.................................................................. iii

Introduction and Procedural History........................................1

Statement of Facts ...................................................................1

Argument..................................................................................2

   1.  *Defendant engaged in a "communication" with Hatteras.* ...............2

   2.  *Regulation F and other CFPB guidance do not authorize or permit the use of a letter vendor.*......................................................12

   3.  *There is no blanket exception in the statute which allows a debt collector to convey information to agents.* ...........................................15

   4.  *There is no doubt that Hatteras received and accessed information about Plaintiff's account.*......................................................17

Conclusion ............................................................................18

Table of Authorities

## Cases

*Belin v. Litton Loan Servicing, LP*,
    2006 WL 1992410 (M.D. Fla. July 14, 2006) ...................................8

*Chatman v. GC Servs., LP*,
    57 F. Supp. 3d 560 (D.S.C. 2014) ......................................................5

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ........................................................................12

*Douglass v. Convergent Outsourcing*,
    765 F.3d 299 (3d Cir. 2014) ..............................................................9

*Heintz v. Jenkins*,
    514 U.S. 291 (1995) ..........................................................................9

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion
    vacated,* 17 F.4th 1103 (11th Cir. 2021) ..........................................7

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    994 F.3d 1341 (11th Cir. 2021), *opinion vacated and superseded on
    reh'g,* 17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted,
    opinion vacated,* 17 F.4th 1103 (11th Cir. 2021) .............................7

*Jackin v. Enhanced Recovery Co., LLC*,
    2022 WL 2111337 (E.D. Wash. June 10, 2022) .................... passim

*Khimmat v. Weltman, Weinberg and Reis Co., LPA*,
    585 F. Supp.3d 707 (E.D. Pa. 2022) ....................................... passim

iii

*Krapf v. Collectors Training Inst. of Illinois, Inc.*,
   2010 WL 584020 (W.D.N.Y. Feb. 16, 2010) ..................................... 7

## Statutes

15 U.S.C. § 1692a ................................................................. 5, 6

15 U.S.C. § 1692c(b) ....................................................... passim

15 U.S.C. § 1692 ....................................................................... 1

15 U.S.C. 1692a(2) .................................................................. 4

<u>Introduction and Procedural History</u>

This action arises from Defendant's decision to convey Plaintiff's personal information to a third-party entity—namely, a letter vendor that Defendant uses to provide mailing services ("Hatteras"). The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), specifically prohibits debt collectors, such as Defendant, from communicating with third parties while attempting to collect a debt, absent very limited exceptions not applicable here. Despite this clear prohibition, Defendant chose to provide Plaintiff's information to Hatteras.

The parties completed discovery, and have each filed a motion for summary judgment. The instant brief is Plaintiff's opposition to Defendant's motion for summary judgment.

<u>Statement of Facts</u>

The parties agree on nearly all of the underlying facts in this matter. Specifically, there is no dispute that Defendant transmitted information about Plaintiff to Hatteras to enable Hatteras to send a letter to Plaintiff on Defendant's behalf, nor is there any dispute that Plaintiff is a "consumer," Defendant is a "debt collector," and the

1

account at issue was a "debt," as those terms are all defined by the
FDCPA. (Doc. 34 at ¶¶ 1-9, 13.) Furthermore, there is no dispute that
Hatteras utilized the information provided to it by Defendant to mail a
letter to Plaintiff on or about August 23, 2021. (Doc. 34 at ¶¶ 7-8.)

<u>Argument</u>

In support of its motion, Defendant advances three arguments.
First, Defendant claims that Hatteras was only a "medium" for a
communication, and therefore could not be a "person" who received a
conveyance of information. Second, Defendant claims that the CFPB
has authorized the use of letter vendors. And, finally, Defendant claims
that Plaintiff has no evidence to demonstrate that a person received the
improperly conveyed information. As discussed below, the Court should
reject each of these arguments.

### 1. *Defendant engaged in a "communication" with Hatteras.*

Defendant's primary argument is that the debt-related
information that it sent to Hatteras was not a "communication." (Def.
Br. pp. 5-9.) However, Defendant distorts the facts. Defendant
characterizes Plaintiff's claim as involving only a *single*
communication—a communication directed from Defendant to Plaintiff,

2

using Hatteras as a "medium." But, in actuality, there are *two* separate communications at issue here. The first was Defendant's communication *to Hatteras* in which Defendant provided the specific data related to Plaintiff's account (hereinafter "the First Communication"). It is undisputed that Defendant provided Hatteras with this information. The second was Defendant's communication to *Plaintiff* (*through* Hatteras) in which Defendant demanded payment of the debt (hereinafter "the Second Communication"). (Doc. 1-1 at p. 10.) Plaintiff's claim is premised *solely* on the First Communication. In other words, although the improper First Communication ultimately *led to* the Second Communication, Plaintiff has not alleged that there was anything regarding the Second Communication which on its *own* violated the FDCPA.[1]

---

[1] To understand why the First Communication was separate from the Second Communication, consider that the Second Communication might never actually occur. For example, one large letter vendor is a company named RevSpring, Inc. This company advertises on its website that it can enhance its clients' data by performing, *inter alia*, "scrubs" for debtors in bankruptcy. See https://revspringinc.com/financial-services/products/print-and-mail-enhanced-data-cleansing/, last visited March 16, 2023. A "bankruptcy scrub" is exactly what it sounds like — a data file is compared to a database and any consumer who has filed a bankruptcy case is "scrubbed" from the file. Those bankruptcy debtors then do not receive collection letters. It is certainly plausible that

This clarification – that there were multiple communications – is very important, and is fatal to many of Defendant's arguments. First, Defendant argues that the terms "person" and "medium" are mutually exclusive.[2] However, this mutual-exclusivity argument crumbles once it is recognized that multiple communications exist, and that there is nothing which would prohibit an entity from being a "medium" for one communication and a "person" for another. In this case, that is exactly what happened.

Here, it is clear that the First Communication was a communication between Defendant and Hatteras. In order to use Hatteras's services, Defendant necessarily had to convey information to Hatteras about the Debt. This conveyance included Plaintiff's name, address, the precise amount of the Debt, and the entity to which

Hatteras could receive a debtor's name, account number, and other account specific information, but then not mail a letter because the debtor is protected from collection efforts due to a pending bankruptcy case. In such a situation, Hatteras would have still received the First Communication from the debt collector—i.e. the conveyance of information regarding a debt—even if it never mailed the Second Communication to the debtor.

[2] The FDCPA defines a communication as the conveying of information regarding a debt directly or indirectly <u>to any person</u> *through any medium*. 15 U.S.C. § 1692a(2).

Plaintiff allegedly owed the Debt. (Defendant's Statement of Facts at ¶ 13.) The FDCPA defines a communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a. And, there can be no real dispute that, in the First Communication, Defendant conveyed information about the Debt to Hatteras. *See generally Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 567 (D.S.C. 2014)(recognizing that the clear majority of courts have held that telephone messages which only stated the name of the debtor and requested a return call constituted "communications" as defined by the FDCPA). As a result, under the plain language of the statute, the First Communication was a "communication" as defined by the FDCPA.

This interpretation of the statute is reasonable even if the Court were to hold that the terms "medium" and "person" are mutually exclusive. During the First Communication, Hatteras is the "person"— i.e., the recipient.  On the other hand, Hatteras *could* be interpreted as acting merely as a medium during the Second Communication, when it

mails a letter to Plaintiff on Defendant's behalf.[3] Thus, for each communication Plaintiff asserts only a single role for Hatteras, and does not argue that Hatteras was both the recipient *and* the medium for the communication.

Caselaw supports Plaintiff's argument. Judge Wolson recently held that a "communication" took place in a nearly identical situation in *Khimmat v. Weltman, Weinberg and Reis Co., LPA*, 585 F. Supp.3d 707 (E.D. Pa. 2022). Specifically, in denying a motion to dismiss, the court

---

[3] It is not at all clear that, as used in 15 U.S.C. § 1692a(2), the term "medium" would refer to a person or entity. On November 30, 2021, the CFPB's regulations regarding the FDCPA went into effect. In Comment 1 to 12 CFR § 1006.2(d), the CFPB stated: "Section 1006.2(d) provides, in relevant part, that a communication can occur through any medium. 'Any medium' includes any oral, written, electronic, or other medium. For example, a communication may occur in person or by telephone, audio recording, paper document, mail, email, text message, social media, or other electronic media." *available at* https://www.consumerfinance.gov/rulespolicy/regulations/1006/2021-11-30/interp-2/#2-d-Interp, last visited April 12, 2023. Although this regulation was not in effect when the violation occurred in this case, it nevertheless provides a reasonable interpretation of the word "medium." It thus appears that the term medium is referring only to the *method* of the communication. In the present case, the medium for the First Communication would be an electronic transmission through an SSH File Transfer Protocol and the medium for the Second Communication would be via mail. However, the Court need not determine here the proper interpretation of the term medium, as Plaintiff's claim is based only on the First Communication, which was undoubtedly a communication between Defendant and Hatteras.

held that the debt collector's "transmission of information to its letter vendor was a communication under the FDCPA." *Id.* And, he also "[c]onclude[d] that Congress intended the word 'medium' to refer to the mechanical means of communication—a telephone, telegram, or, in more modern terms, email or file transfer." *Id.* at 711.[4]

Likewise, Judge Mendoza, Jr. rejected the arguments Defendant raises here. In doing so, he specifically held "the term 'medium' refers to a means of transmission—for example, via telephone or email, 'rather than to an intermediary that might (or might not) be present.'" *Jackin v. Enhanced Recovery Co., LLC*, 2022 WL 2111337, at *3 (E.D. Wash. June 10, 2022)(quoting *Khimmat*).

Furthermore, in *Krapf v. Collectors Training Inst. of Illinois, Inc.*, 2010 WL 584020 (W.D.N.Y. Feb. 16, 2010), the court held that the debt

---

[4]  Judge Wolson agreed with a now-vacated decision in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016 (11th Cir. 2021). However, this decision was subsequently vacated, and the Eleventh Circuit *en banc* ultimately dismissed the case for lack of standing in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016 (11th Cir. 2021)48 F.4th 1236 (11th Cir. 2022). However, as the *en banc* decision never addressed the merits of the claim (instead dismissing on jurisdictional grounds), Plaintiff asserts that the reasoning discussed by Judge Wolson can still serve be persuasive even if the underlying decision was vacated.

collector had violated multiple provisions of the FDCPA when it contacted the consumer's employer, advised the employer that the call was about a business matter, and asked the employer to advise the consumer to return the telephone call. The employer did as requested. *Krapf* thus had two communications. First, was the communication from the debt collector to the employer—which was impermissible. Second, was the communication from the employer to the consumer on the debt collector's behalf. As in the instant matter, in the first communication, the intermediary was the recipient of an unlawful disclosure, and in the second communication, the intermediary could be seen as the medium for the communication. *See also Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410 (M.D. Fla. July 14, 2006)(holding that a voicemail left on the debtor's mother's voicemail asking for the debtor to return the telephone call constituted a communication with the mother in violation of 15 U.S.C. § 1692c(b)). Thus, Plaintiff's claim survives because Hatteras *was* the recipient of the First Communication, and Defendant therefore communicated "with any person other than the consumer, his attorney, a consumer reporting

8

agency . . . , the creditor, the attorney of the creditor, or the attorney of
the debt collector." 15 U.S.C. § 1692c(b).

Defendant does not rely on ***any*** case on point in making its
argument regarding mediums and whether or not a communication took
place. Instead, it references (without citing) other portions of the
FDCPA which mention telegrams, and FTC staff commentary.
However, this commentary was never binding authority. *See Heintz v.
Jenkins*, 514 U.S. 291, 298 (1995)(FDCPA case noting that the FTC
Staff Commentary is not binding, and refusing to follow it because it
"falls outside the range of reasonable interpretations of the Act's
express language."); *Douglass v. Convergent Outsourcing*, 765 F.3d 299,
304 (3d Cir. 2014)(recognizing that FTC Staff Commentary of the
FDCPA is not binding, and declining to follow it).

Additionally, the commentary is so outdated that it is not
persuasive. For example, when discussing the prohibition on a debt
collector conveying a false sense of urgency to the consumer, the FTC
stated that it is "*usually* permissible to send a letter generated by a
machine, such as a computer or other printing device." 53 FR 50106
(emphasis added). Such commentary was relevant back in 1988, when

9

the use of computers or other printing devices was far less commonplace. However, as nearly all business is now conducted using such equipment, the mere fact that a letter was computer-generated would never convey a "sense of urgency" to today's consumer.

The section of the staff commentary that Defendant references is likewise no longer relevant due to its age. Specifically, Defendant cites to a portion of the commentary which refers to the conveying of information to a "telephone operator," a position which was phased out decades ago, or to a "telegraph company," an antiquated form of communication with almost no practical application in today's world.[5] However, as the FDCPA *does* specifically mention the use of a telegram, and as it would have been impossible in 1988 to send a telegram without conveying information to the telegraph company, it is understandable why in 1988 the FTC understood that such an exception was implicitly contained in the FDCPA. However, it has always been

---

[5] It appears that a telegram *can* still be sent through International Telegram. https://itelegram.com/telegram/USA/. These telegrams now cost $18.95 to send up to 100 words, and can be ordered online. Plaintiff questions whether Defendant has *ever* used a telegram to communicate with a debtor.

the case that a debt collector can *directly* mail a letter to the consumer. Thus, any implicit exception found by the FTC does not apply to a situation like the present case, where the communication with an intermediary was not necessary.

Both *Khimmat* and *Jackin* also reject the "telegram argument." *Khimmat* specifically discussed a similar argument, and further distinguished the commentary because "phone and telegraph companies are wire-based, regulated utilities, plainly distinguishable from private letter vendors." 585 F. Supp.3d at 715. *Jackin* reached the same holding, and also held that "[m]oreover, providing an entity with specific details concerning a consumer's debt is more than incidental contact and clearly distinguishable from the minimal contact endorsed in the [FTC commentary]." *Jackin*, 2022 WL 2111337 at *4. Simply put, the telegram argument is a red herring, and should easily be rejected.

It is clear that the First Communication was a conveyance of information from Defendant to Hatteras regarding the alleged debt. Thus, the Court should reject Defendant's argument, and hold that Defendant "communicated" with Hatteras in the First Communication.

11

2. *Regulation F and other CFPB guidance do not authorize or permit the use of a letter vendor.*

Defendant also claims that the CFPB has authorized the use of letter vendors. The CFPB has done no such thing. Defendant appears to be arguing that the CFPB *implicitly* approved the use of letter vendors. Defendant claims that the CFPB took no issue with the use of letter vendors, because the CFPB mentioned that letter vendors existed. But, there is absolutely no authority to support Defendant's implication that an agency's *non-action* with respect to certain conduct must be read as blessing that conduct—and certainly nothing which would warrant the type of deference Defendant suggests should be given to rules which, at most, tangentially reference the use of vendors (and which never discussed whether a disclosure to vendors would comply with 15 U.S.C. § 1692c(b)).

In fact, Plaintiff would assert that, based on the plain and unambiguous nature of the statue, deference to any contrary interpretation would be improper. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

12

This "implicit approval" argument was also rejected in *Khimmat*. There, the court held that the fact that an agency had not taken action against a debt collector for using a letter vendor "only tells the Court that it is not an issue of importance to those agencies." *Khimmat*, 585 F. Supp. 3d at 715. The court also held that none of the CFPB or FTC guidance was on point, because none of it addressed the debt collector actually communicating information to or through a letter vendor. *Id.* And, as discussed *supra*, the court also distinguished the 1988 FTC commentary discussing telephone and telegraph companies, noting that those types of entities "are wire-based, regulated utilities, plainly distinguishable from private letter vendors." *Id.*

The *Jackin* court reached the same holding, stating:

> Defendant makes much of the fact that the CFPB has not expressed concern over debt collectors using mail vendors. See ECF No. 6 at 12. Again, the Court will not opine on the CFPB's regulatory priorities and will certainly not assume from its inaction in this area that it supports the practice. Defendant also submits that the CFPB has approved of a debt collector disclosing a vendor's mailing address if the vendor accepts disputes and requests for original-creditor information. Id. But providing a vendor's mailing address is clearly different from providing a consumer's debt information. And "[a] debt collector receiving information from a consumer through a letter

vendor is not the same as a debt collector communicating information to or through a letter vendor." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *5.

For these reasons, the guidance cited by Defendant does not directly bear on the legal issue involved here and the Court declines to treat the FTC's and CFPB's actions as dispositive.

*Jackin v. Enhanced Recovery Co., LLC*, --- F. Supp.3d ---, 2022 WL 2111337 (E.D. Wash. June 10, 2022). Here, Defendant asks the Court to make a massive leap regarding the CFPB's policy decisions. Simply put, the CFPB regulations never permit the conduct at issue in this case.[6]

Ultimately, Defendant's argument is the same argument which was rejected in *Khimmat* and *Jackin*. The Court should likewise reject the argument here.[7]

---

[6] And, if the CFPB truly felt that letter vendors were permissible, it could have indicated as much in the more than two years since this legal theory first began being litigated nationwide.

[7] Similarly, Defendant's argument regarding the CFPB permitting a debt collector to have mail sent to a letter vendor is not at all relevant. 15 U.S.C. § 1692c(b) prohibits a *debt collector* from conveying information to a third-party. A consumer is, of course, free to share his or her own information with any individual. And, in the situation where a consumer mails a letter to the letter vendor, the consumer is the one making the disclosure. 15 U.S.C. § 1692c(b) simply has no relevance to that discussion by the CFPB.

3. *There is no blanket exception in the statute which allows a debt collector to convey information to agents.*

Although Defendant does not explicitly make an argument in its brief in support of its motion for summary judgment asserting that agents should be excluded from 15 U.S.C. § 1692c(b)'s prohibition, it does hint at the argument through its citation to the Restatement (Third) of Agency. Such an argument is incorrect.

Rather, 15 U.S.C. § 1692c(b)'s exceptions[8] *specifically* permit a debt collector to communicate with the debt collector's attorney. The relationship between a client and its attorney is a quintessential agency relationship. Thus, § 1692c(b)'s specific mention of the attorney would be mere surplusage if *all* agents were already exempted. *See Khimmat v. Weltman, Weinberg and Reis Co., LPA*, 585 F. Supp.3d 707 (E.D. Pa.

---

[8] This section permits communications to be made to "the consumer, his attorney, a consumer reporting agency . . . , the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). A debt collector is also permitted to communicate with other individuals or entities if the debt collector has the consent of the consumer or express permission from a court of competent jurisdiction. *Id.* Finally a debt collector may communicate with other individuals or entities "as reasonably necessary to effectuate a postjudgment judicial remedy . . . ." *Id.*

Feb. 7, 2022);[9] and *Jackin v. Enhanced Recovery Co., LLC*, 2022 WL 2111337 (E.D. Wash. June 10, 2022).[10] As a result, the Court should reject any argument by Defendant seeking to find an exception in the statute for all agents.

Furthermore, Defendant has not introduced sufficient evidence to demonstrate that Hatteras is an agent, as opposed to an independent contractor. In fact, the evidence obtained in this case demonstrates that Defendant does *not* have any agency relationship with Hatteras. Specifically, Defendant's designee testified that no one employed by Defendant has visited Hatteras's facility for at least 13 years—and the

---

[9] Specifically, the *Khimmat* court said: "Section 1692c(b) provides six exceptions to its prohibition on communications in connection with a debt, for the consumer, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, and the attorney of the debt collector. Three of these exceptions are for attorneys, who have an agency relationship with their clients. Congress's explicit reference to some types of agents—attorneys—and not others indicates that Congress expected the statute to apply to agents unless a specific exemption applied." *Id.* at 713.

[10] The *Jackin* court held: "It makes little sense for Congress to expressly exempt some agents if Congress did not intend that statute's prohibition to generally apply to agents unless a specific exemption applied. Otherwise, Congress would not have specifically exempted attorneys in the text of the statute." *Id.* at *4.

individual who was involved passed away well over a decade ago.

(Church Dep at p. 53:11-21.) Furthermore, Defendant's designee stated

that he does not believe anyone employed by Defendant would know

what Hatteras does with the information Defendant conveys to it.

(Church Dep. at p. 30:12-23.) In fact, Defendant does not even have a

written contract with Hatteras. (Church Dep. at p. 42:6-17.) Finally,

Defendant's designee believes that no employed by Defendant has

spoken to Hatteras by phone in multiple years. (Church Dep. at p.

43:17-44:2.) Simply put, even if an agency relationship *could* be a

defense to this action, Defendant cannot demonstrate that it has the

type of control and oversight which would be necessary to establish an

agency relationship here.

4. *There is no doubt that Hatteras received and accessed information about Plaintiff's account.*

Finally, Defendant argues that Plaintiff cannot present evidence

that her information was "delivered" to any person besides herself. This

argument is completely untrue. In making this argument, Defendant

attempts to ignore the conveyance of information made by Defendant to

Hatteras—i.e. the First Communication. As Plaintiff has stated, this

First Communication is the subject of the case. And, there is no doubt

that Hatteras both received and understood the information conveyed to it in the First Communication. To the extent that Defendant is arguing that no one *besides* Hatteras received or viewed the information, that argument would be a red herring. The FDCPA does not require that a debt collector share personal information about a debtor with *multiple* people. Sharing the information with Hatteras is enough to establish liability in this case. And, because Hatteras was able to use that information to prepare a collection letter to Plaintiff, there can be no doubt that Hatteras received and understood the information.

Because a communication to a letter vendor is not the type of communication which is exempted from 15 U.S.C. § 1692c(b), there is enough evidence in the record to demonstrate without any doubt that Plaintiff's personal information was shared with an unauthorized person—namely Hatteras. Thus, the Court should deny Defendant's motion for summary judgment.

## Conclusion

At its heart, this case comes down to whether Congress meant what it said when it prohibited a debt collector from communicating personal debt collection information about a consumer to a third-party

18

when attempting to collect a debt. The plain language of the statute clearly mandates that such conduct is prohibited.

Here, Defendant engaged in that prohibited conduct when it conveyed Plaintiff's personal information to Hatteras. Defendant attempts to explain its conduct away by arguing that it did not "communicate" with the Hatteras, or that Hatteras was merely a "medium." However, each of these arguments fails for the reasons discussed above. Furthermore, the use of a letter vendor was not blessed by the CFPB or the FTC.

Finally, Defendant attempts to argue that Plaintiff cannot establish that anyone besides Hatteras saw or received her confidential information. This may be true, but Plaintiff's claim is premised on the communication by Defendant *to* Hatteras. The statute does not require any subsequent disclosure to occur. Instead, it prohibits this initial conveyance of information to the letter vendor.

Thus, for the foregoing reasons, the Court should deny Defendant's Motion for Summary Judgment.

*s/ Brett Freeman*
Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff

FREEMAN LAW
210 Montage Mountain Rd.
Moosic, PA 18507
P: (570) 589-0010
F: (570) 456-5955
brett@freeman.law

<u>Certificate of Compliance</u>

The foregoing brief contains 4,343 words. I have relied on the word-count feature of the word-processing program used to prepare the brief.

*s/ Brett Freeman*
Brett Freeman