## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Justine Moore,<br>               Plaintiff | Docket No. 3:21-cv-01724-MEM<br><br>(Judge Malachy E. Mannion) |
| v. | ELECTRONICALLY FILED |
| Merchants & Medical Credit<br>Corporation, Inc.,<br>               Defendant | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

*s/ Brett Freeman*
Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff
FREEMAN LAW
210 Montage Mountain Rd.
Moosic, PA 18507
P: (570) 589-0010
F: (570) 456-5955
brett@freeman.law

## Table of Contents

Table of Contents .......................................................................ii

Table of Authorities................................................................. iii

Introduction and Procedural History.......................................................1

Argument...............................................................................1

   1.  The conveyance of information in this case constituted a
   "communication," and Hatteras was not simply a "medium." ..............2

   2.  The conveyance of information to Hatteras was made "in
   connection with" the collection of a debt..............................................10

   3.  Defendant has not established that Hatteras was an "agent,"
   although the agency argument is simply a red herring. ....................15

   4.  Plaintiff did not consent to Defendant communicating to
   Hatteras… ..........................................................................18

   5.  *Hunstein II* addressed the merits of the underlying theory. .........19

   6.  Although decided through different procedural mechanisms, the
   cases cited by Plaintiff are persuasive.................................................20

Conclusion ...........................................................................21

Table of Authorities

## Cases

*Ali v. Credit Corp. Sols.*, Inc.,
    2022 WL 986166 (N.D. Ill. Mar. 30, 2022)..................................2, 20

*Belin v. Litton Loan Servicing, LP*,
    2006 WL 1992410 (M.D. Fla. July 14, 2006) ...................................8

*Chatman v. GC Servs., LP*,
    57 F. Supp. 3d 560 (D.S.C. 2014) ......................................................5

*Gburek v. Litton Loan Servicing LP*,
    614 F.3d 380 (7th Cir. 2010).......................................................11, 13

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion
    vacated,* 17 F.4th 1103 (11th Cir. 2021) .........................................7

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    994 F.3d 1341 (11th Cir. 2021), *opinion vacated and superseded on
    reh'g,* 17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted,
    opinion vacated,* 17 F.4th 1103 (11th Cir. 2021), *subsequently
    dismissed on standing grounds.............................................2, 7, 19*

*Jackin v. Enhanced Recovery Co., LLC*,
    2022 WL 2111337, at *3 (E.D. Wash. June 10, 2022) ..... 2, 7, 16, 20

*Johnson-Gellineau v. Steine & Associates*,
    Docket No. 16-CV-9945 (S.D.N.Y June 27, 2019).........................10

*Johnson-Gellineau v. Steine & Associates*,
    Docket No. 19-2236-cv (2d Cir. November 17, 2020)......................9

*Khimmat v. Weltman, Weinberg and Reis Co., LPA*,
    585 F. Supp.3d 707 (E.D. Pa. 2022) ....................................... passim

*Krapf v. Collectors Training Inst. of Illinois, Inc.*,
    2010 WL 584020 (W.D.N.Y. Feb. 16, 2010) ....................................8

**Statutes**

15 U.S.C. § 1692a ...................................................................5, 6

15 U.S.C. § 1692c(b) ............................................................9, 15

15 U.S.C. § 1692a(2). ...............................................................4

<u>Introduction and Procedural History</u>

This action arises from Defendant's decision to convey Plaintiff's personal information to a third-party entity—namely, a mailing company that Defendant uses for mailing services ("Hatteras"). The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, specifically prohibits debt collectors, such as Defendant, from communicating with third parties while attempting to collect a debt, absent very limited exceptions not applicable here. Despite this clear prohibition, Defendant chose to provide Plaintiff's information to Hatteras.

After learning about this improper conveyance of information, Plaintiff filed this lawsuit in the Lackawanna County Court of Common Pleas. Defendant removed the matter, and the parties participated in and completed discovery. Each party has filed a motion for summary judgment. Plaintiff now files this reply brief in support of her motion for summary judgment as to liability only.

<u>Argument</u>

In her supporting brief, Plaintiff primarily relied upon four decisions which each addressed the letter vendor theory. Those cases,

1

*Hunstein*,[1] *Khimmat*,[2] *Jackin*,[3] and *Ali*[4] are the only federal cases Plaintiff is aware of discussing the merits of the letter vendor theory presented in this case.

In its opposition, Defendant does not cite to any caselaw rejecting the letter vendor theory. Instead, Defendant advances a number of non-case-law-based arguments in an attempt to defeat Plaintiff's motion. However, as discussed below, each of these challenges fail.

   1. *The conveyance of information in this case constituted a "communication," and Hatteras was not simply a "medium."*

Defendant's primary argument is that the conveyance of Plaintiff's personal information to Hatteras was not a "communication." However, Defendant distorts the facts. Defendant characterizes Plaintiff's claim as involving only a *single* communication—a communication directed

---

[1] *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021), *opinion vacated and superseded on reh'g,* 17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion vacated,* 17 F.4th 1103 (11th Cir. 2021), *subsequently dismissed on standing grounds.*

[2] *Khimmat v. Weltman, Weinberg and Reis Co., LPA*, 585 F. Supp.3d 707 (E.D. Pa. 2022).

[3] *Jackin v. Enhanced Recovery Co., LLC*, --- F. Supp.3d ---, 2022 WL 2111337 (E.D. Wash. June 10, 2022).

[4] *Ali v. Credit Corp. Sols.*, Inc., 2022 WL 986166 (N.D. Ill. Mar. 30, 2022).

from Defendant to Plaintiff, using Hatteras as a "medium." But, in actuality, there are *two* separate communications at issue here. The first was Defendant's communication *to Hatteras* in which Defendant provided the specific data related to Plaintiff's account (hereinafter "the First Communication"). It is undisputed that Defendant provided Hatteras with this information. The second was Defendant's communication to *Plaintiff* (*through* Hatteras) in which Defendant demanded payment of the debt (hereinafter "the Second Communication"). (Doc. 1-1 at p. 10.) Plaintiff's claim is premised *solely* on the First Communication. In other words, although the improper First Communication ultimately *led to* the Second Communication, Plaintiff has not alleged that there was anything regarding the Second Communication which on its *own* violated the FDCPA.[5]

---

[5] To understand why the First Communication was separate from the Second Communication, consider that the Second Communication might never actually occur. For example, one large letter vendor is a company named RevSpring, Inc. This company advertises on its website that it can enhance its clients' data by performing, *inter alia*, "scrubs" for debtors in bankruptcy. See https://revspringinc.com/financial-services/products/print-and-mail-enhanced-data-cleansing/, last visited April 24, 2023. A "bankruptcy scrub" is exactly what it sounds like — a data file is compared to a database and any consumer who has filed a bankruptcy case is "scrubbed" from the file. Those bankruptcy debtors then do not receive collection letters. It is certainly plausible that

This clarification – that there were multiple communications – is very important, and is fatal to many of Defendant's arguments. First, Defendant argues that the terms "person" and "medium" are mutually exclusive.[6] However, this mutual-exclusivity argument crumbles once it is recognized that multiple communications exist, and that there is nothing which would prohibit an entity from being a "medium" for one communication and a "person" for another. In this case, that is exactly what happened.

Here, it is clear that the First Communication was a communication between Defendant and Hatteras. In order to use Hatteras's services, Defendant necessarily had to convey information to Hatteras about the Debt. This conveyance included Plaintiff's name, address, the precise amount of Plaintiff's Debt, and the entity to which

_____

Hatteras could receive a debtor's name, account number, and other account specific information, but then not mail a letter because the debtor is protected from collection efforts due to a pending bankruptcy case. In such a situation, Hatteras would have still received the First Communication from the debt collector—i.e. the conveyance of information regarding a debt—even if it never mailed the Second Communication to the debtor.

[6] The FDCPA defines a communication as the conveying of information regarding a debt directly or indirectly <u>to any person</u> *through any medium*. 15 U.S.C. § 1692a(2).

Plaintiff allegedly owed the debt. (Doc. 23 at ¶ 13.) The FDCPA defines a communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a. And, there can be no real dispute that, in the First Communication, Defendant conveyed information about Plaintiff's account to Hatteras. *See generally Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 567 (D.S.C. 2014)(recognizing that the clear majority of courts have held that telephone messages which only stated the name of the debtor and requested a return call constituted "communications" as defined by the FDCPA). As a result, under the plain language of the statute, the First Communication was a "communication" as defined by the FDCPA.

This interpretation of the statute is reasonable even if the Court were to hold that the terms "medium" and "person" are mutually exclusive. During the First Communication, Hatteras is the "person"— i.e., the recipient.  On the other hand, Hatteras *could* be interpreted as acting merely as a "medium" during the Second Communication, when

5

it mails a letter to Plaintiff on Defendant's behalf.[7] Thus, for each communication Plaintiff asserts only a single role for Hatteras, and does not argue that Hatteras was both the recipient *and* the medium for the communication.

Caselaw supports Plaintiff's argument. Judge Wolson recently held that a "communication" took place in a nearly identical situation in *Khimmat v. Weltman, Weinberg and Reis Co., LPA*, 585 F. Supp.3d 707

---

[7] It is not at all clear that, as used in 15 U.S.C. § 1692a(2), the term "medium" would refer to a person or entity. On November 30, 2021, the CFPB's regulations regarding the FDCPA went into effect. In Comment 1 to 12 CFR § 1006.2(d), the CFPB stated: "Section 1006.2(d) provides, in relevant part, that a communication can occur through any medium. 'Any medium' includes any oral, written, electronic, or other medium. For example, a communication may occur in person or by telephone, audio recording, paper document, mail, email, text message, social media, or other electronic media." *available at* *https://www.consumerfinance.gov/rulespolicy/regulations/1006/2021-11-30/interp-2/#2-d-Interp*, last visited April 24, 2023. Although this regulation was not in effect when the violation occurred in this case, it nevertheless provides a reasonable interpretation of the word "medium." It thus appears that the term medium is referring only to the *method* of the communication. In the present case, the medium for the First Communication would be an electronic transmission through an SSH File Transfer Protocol and the medium for the Second Communication would be via mail. However, the Court need not determine here the proper interpretation of the term medium, as Plaintiff's claim is based only on the First Communication, which was undoubtedly a communication between Defendant and Hatteras.

(E.D.a. 2022). Specifically, in denying a motion to dismiss, the court held that the debt collector's "transmission of information to its letter vendor was a communication under the FDCPA." *Id.* And, he also "[c]onclude[d] that Congress intended the word 'medium' to refer to the mechanical means of communication—a telephone, telegram, or, in more modern terms, email or file transfer." *Id.* at 711.[8]

Likewise, Judge Mendoza, Jr. rejected the arguments Defendant raises here. In doing so, he specifically held "the term 'medium' refers to a means of transmission—for example, via telephone or email, 'rather than to an intermediary that might (or might not) be present.'" *Jackin v. Enhanced Recovery Co., LLC*, 2022 WL 2111337, at \*3 (E.D. Wash. June , 2022)(quoting *Khimmat*).

---

[8]  Judge Wolson agreed with a now-vacated decision in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016 (11th Cir. 2021). However, this decision was subsequently vacated, and the Eleventh Circuit *en banc* ultimately dismissed the case for lack of standing in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016 (11th Cir. 2021)48 F.4th 1236 (11th Cir. 2022). However, as the subsequent *en banc* decision never addressed the merits of the claim (instead dismissing on jurisdictional grounds), Plaintiff asserts that the reasoning discussed by Judge Wolson can still be persuasive even if the underlying decision was vacated.

Furthermore, in *Krapf v. Collectors Training Inst. of Illinois, Inc.*, 2010 WL 584020 (W.D.N.Y. Feb. 16, 2010), the court held that the debt collector had violated multiple provisions of the FDCPA when it contacted the consumer's employer, advised the employer that the call was about a business matter, and asked the employer to advise the consumer to return the telephone call. The employer did as requested. *Krapf* thus had two communications. First, was the communication from the debt collector to the employer—which was impermissible. Second, was the communication from the employer to the consumer on the debt collector's behalf. As in the instant matter, in the first communication, the intermediary was the recipient of an unlawful disclosure, and in the second communication, the intermediary could be seen as the medium for the communication. *See also Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410 (M.D. Fla. July 14, 2006)(holding that a voicemail left on the debtor's mother's voicemail asking for the debtor to return the telephone call constituted a communication with the mother in violation of 15 U.S.C. § 1692c(b)). Thus, Plaintiff's claim survives because Hatteras *was* the recipient of the First Communication, and Defendant therefore communicated "with any

8

person other than the consumer, his attorney, a consumer reporting agency . . . , the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b).

Defendant cites to only one case in support of its argument that a communication did not occur. That case, *Johnson-Gellineau v. Steine & Associates,* Docket No. 19-2236-cv (2d Cir. November 17, 2020) is not persuasive. *Johnson-Gellineau* was an unreported summary order by the Second Circuit which, by rule, does not have any precedential effect. Furthermore, the consumer in *Johnson-Gellineau* was not represented by counsel, and was proceeding *pro se*. Finally, there was virtually no discussion regarding 15 U.S.C. § 1692c(b) in this decision. Instead, the court spends one sentence restating that the consumer asserted a claim under § 1692c(b), and then one more sentence stating that the communications at issue did not violate that prohibition for the reasons stated by the district court. There is no other analysis of the issue.

The underlying district court decision does provide some further enlightenment on the issue though, as the court simply held that "[c]ourts in this and other circuits, relying on *Heintz,* have similarly found that communications made in the context of foreclosure

9

proceedings **that would otherwise violate § 1692c if made to a third party** do not run afoul of the FDCPA." *Johnson-Gellineau v. Steine & Associates,* Docket No. 16-CV-9945 (S.D.N.Y June 27, 2019)(emphasis added). Thus, *Johnson-Gellineau* does not support Defendant's argument that communications to a third-party letter vendor are permissible—instead the case has a very limited application solely to communications made to *a court* in furtherance of litigation. And, the district court noted that these communications would otherwise violate the statute. As a result, *Johnson-Gellineau* does not help Defendant at all.

Ultimately, it is clear that the First Communication was a conveyance of information from Defendant to Hatteras regarding the alleged debt. Thus, the Court should reject Defendant's argument, and hold that Defendant "communicated" with Hatteras in the First Communication.

   2. *The conveyance of information to Hatteras was made "in connection with" the collection of a debt.*

Defendant's next argument is that the communication with Hatteras was not made in connection with the collection of a debt. This

argument again misses the mark. Defendant acknowledges in its brief that "the phrase 'in connection with the collection of a debt' is broad." (Doc. 33 p. 9.) But, Defendant then makes the false statement that Plaintiff is attempting to assert that "virtually any communication with another person in the ordinary course of business fits the bill." This assertion by Defendant is completely false, and Plaintiff has never suggested that she is trying to make such a sweeping generalization. Rather, Plaintiff has provided a thorough discussion of the issue in her brief in support, including numerous citations to legal authority utilizing the "animating purpose" test that Plaintiff believes is correct. (Doc. 28 pp. 9-16.)

Defendant recognizes that the Third Circuit often will look to the factors set forth in *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010), when determining if a communication is actionable under the FDCPA. Plaintiff agrees with this statement, as *Gburek* is one of the cases she primarily relies upon.[9] There, a conveyance of information was made to a third-party, and the third-party then

---

[9] Plaintiff's full discussion of *Gburek* can be found in Doc. 28 at pp. 12-15.

11

contacted the consumer. Regarding this communication between the debt collector and the third-party, the 7th Circuit stated: "The third and final communication is [the debt collector's] contact with [the third party], and this *plainly* constitutes a communication in connection with the collection of a debt." *Gburek*, 614 F.3d at 386 (emphasis added). The exact same analysis applies here. Defendant conveyed information to Hatteras, for the purpose of allowing Hatteras to mail a letter to Plaintiff on Defendant's behalf. Thus, the communication to Hatteras was made in an attempt to collect the debt.

Here, it is clear that the animating purpose of the communication with Hatteras was to help Defendant collect a debt from Plaintiff. Defendant does not contest that it provided Plaintiff's information to Hatteras to enable Hatteras to send the collection letter to Plaintiff. (Doc. 21 ¶ 13; Doc. 34 ¶ 13.) And, while Defendant now denies that the underlying purpose for sending Plaintiff's information to Hatteras was to collect a debt from Plaintiff, (Doc. 21 ¶ 13; Doc. 34 ¶ 13.), Defendant's designee's testimony on this fact is crystal clear on this point. During the designee's deposition, the following testimony was provided:

12

```
 6  BY MR. FREEMAN:
 7  Q.    What was the underlying purpose of Merchants &
 8        Medical providing information about Ms. Moore
 9        to Hatteras?
10  A.    For them to send a letter.
11  Q.    The collection letter, for instance, that we
12        were looking at before?
13  A.    Correct.
14  Q.    So, would you agree that the underlying purpose
15        was to collect a debt from Ms. Moore?
16  A.    Yes, I would agree.
```

(Church Dep. at p. 56:7-16.). Thus, Defendant's designee clearly agreed that the underlying purpose of the communication to Hatteras was to collect the debt. And, because of this animating purpose for the communication with Hatteras, under *Gburek* there can be no doubt that the communication was made "in connection with" the collection of a debt.

Defendant also attempts to argue that *Khimmat* must have wrongly decided the issue of whether a communication to a letter vendor was made in connection with the collection of a debt because that court noted that some of the persons excluded under 15 U.S.C. § 1692c(b); namely the creditor, the creditor's attorney, a consumer reporting agency, or the debt collector's attorney; "will not demand

payment or motivate a consumer to pay a debt." *Khimmat*, 585 F.Supp 3d at 712. Defendant then argues that this analysis must be wrong, because it believes that "communications with a credit reporting agency *do* tend to motivate payment." (Doc. 33. p. 11, emphasis in original).

While there *is* some authority to view credit reporting as an attempt to collect a debt, there should be no doubt that the debt collector's actual *conveyance* of information to the consumer reporting agency is much further away from collection activity than the conveyance of information to Hatteras here. Regarding a consumer reporting agency, any "collection attempt" happens later when a subsequent report is distributed by the consumer reporting agency on its own behalf. On the other hand, the communication with Hatteras *directly* led to a collection attempt being made on the consumer. Thus, the distinction Defendant attempts to draw is not a meaningful one.[10]

---

[10] Defendant also inconsistently argues that simply transmitting "raw data" conveyance to Hatteras was not a communication made in an attempt to collect a debt, specifically stating that: "[t]he encrypted data file transmitted to Hatteras did not contain a demand for payment; it contained raw data and nothing else." (Doc. 33 p. 12.) Of course, a transmission to a credit reporting agency would **also** not contain a demand for payment, and instead would again contain raw data and nothing else. Defendant cannot both argue that a conveyance to a credit reporting agency should be considered a communication made "in

Furthermore, *Khimmat* provided a lengthy discussion on the "in connection with" issue, and addressed the issue from multiple different angles. Even if Defendant quibbles with one part of one phrase used by *Khimmat*, Defendant has done nothing to attack the rest of Judge Wolson's reasoning. The court ultimately based its decision on the plain language of the statute, and this Court should do the same thing in holding that the communication between Defendant and Hatteras was made in connection with the collection of a debt.

### 3. Defendant has not established that Hatteras was an "agent," although the agency argument is simply a red herring.

Defendant also briefly argues that it has established that Hatteras is its agent. However, as discussed in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, this argument is a red herring. (Doc. 36 pp. 15-17.) Specifically, 15 U.S.C. § 1692c(b) does *not* contain an implicit exception for agents. Instead, an analysis of the actual text of the statutes demonstrates that it would be improper to read in such an implicit exception. Rather, 15 U.S.C. § 1692c(b)

---

connection with" an attempt to collect a debt, but then also argue that simply transmitting raw data does *not* constitute a communication made "in connection with" an attempt to collect a debt.

*specifically* permits a debt collector to communicate with the debt collector's attorney. The relationship between a client and its attorney is a quintessential agency relationship. Thus, § 1692c(b)'s specific mention of the attorney would be mere surplusage if *all* agents were already exempted. *See Khimmat v. Weltman, Weinberg and Reis Co., LPA*, 585 F. Supp.3d 707 (E.D. Pa. Feb. 7, 2022);[11] and *Jackin v. Enhanced Recovery Co., LLC*, 2022 WL 2111337 (E.D. Wash. June 10, 2022).[12] As a result, the Court should reject any argument by Defendant seeking to find an exception in the statute for all agents.

---

[11] Specifically, the *Khimmat* court said: "Section 1692c(b) provides six exceptions to its prohibition on communications in connection with a debt, for the consumer, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, and the attorney of the debt collector. Three of these exceptions are for attorneys, who have an agency relationship with their clients. Congress's explicit reference to some types of agents—attorneys—and not others indicates that Congress expected the statute to apply to agents unless a specific exemption applied." *Id.* at 713.

[12] The *Jackin* court held: "It makes little sense for Congress to expressly exempt some agents if Congress did not intend that statute's prohibition to generally apply to agents unless a specific exemption applied. Otherwise, Congress would not have specifically exempted attorneys in the text of the statute." *Id.* at *4.

Furthermore, Defendant has not introduced sufficient evidence to demonstrate that Hatteras is an agent, as opposed to an independent contractor. In fact, the evidence obtained in this case demonstrates that Defendant does *not* have any agency relationship with Hatteras. Specifically, Defendant's designee testified that no one employed by Defendant has visited Hatteras's facility for at least 13 years—and the individual who was involved passed away well over a decade ago. (Church Dep at p. 53:11-21.) Furthermore, Defendant's designee stated that he does not believe anyone employed by Defendant would know what Hatteras does with the information Defendant conveys to it. (Church Dep. at p. 30:12-23.) In fact, Defendant does not even have a written contract with Hatteras. (Church Dep. at p. 42:6-17.) Finally, Defendant's designee believes that no one employed by Defendant has spoken to Hatteras by phone in multiple years. (Church Dep. at p. 43:17-44:2.) Simply put, even if an agency relationship *could* be a defense to this action, Defendant cannot demonstrate that it has the type of control and oversight which would be necessary to establish an agency relationship here.

### 4. *Plaintiff did not consent to Defendant communicating to Hatteras.*

Although not discussed in Defendant's brief, in its answer to Plaintiff's statement of facts Defendant states that "Plaintiff reviewed the disclosures provided by Kohl's when she applied for the credit card and expressly understood that her personal information would be shared with others." (Doc. 34 p. 7 at ¶ 5.) Defendant does not develop this argument at all. Furthermore, the portions of Plaintiff's deposition that Defendant cites merely state that Plaintiff was aware that she would receive statements regarding her Kohl's card, and that her information would be shared by Kohl's with the card issuer to allow her to get a credit card. So, it is not at all clear why Defendant is mentioning this testimony (particularly when the testimony is not actually discussed in Defendant's brief in opposition).

However, to the extent that Defendant is attempting to argue that it had consent from Plaintiff to share her information because of some unidentified disclosures with Kohl's, this argument fails. Rather, 15 U.S.C. § 1692c(b) only authorizes a consent defense if the communication was made with "the prior consent of the consumer **given directly to the debt collector** . . . ." (emphasis added). Thus,

18

there is absolutely no relevance to any potential disclosures made by Kohl's to Plaintiff.

     5. _Hunstein II addressed the merits of the underlying theory._

     Defendant begins its brief by stating that "Plaintiff also readily concedes that there was '*no* discussion regarding the merits of the [letter vendor] claim' in *Hunstein II*." (Doc. 33 p. 1.) However, this assertion is untrue for multiple reasons. First, Plaintiff never made such a concession. Rather, Plaintiff specifically stated that in *Hunstein II* the 11th Circuit "again held that the conveying of information from the debt collector to the mailing company was made 'in connection with the collection of any debt.'" (Doc. 28 p. 4.) Furthermore, it is clear that in *Hunstein II* the court *did* conduct a very thorough discussion on the merits. The courts analysis on the merits spans from 17 F.4th 1033 to 1038. Although later vacated on standing grounds, the discussion in *Hunstein II* represents a well-reasoned analysis performed by a panel of the Eleventh Circuit, and the reasoning should be persuasive as to the proper outcome in this case.

6. *Although decided under different procedural mechanisms, the cases cited by Plaintiff are persuasive.*

Finally, Defendant notes that Plaintiff has relied on "various non-binding, lower court opinions . . . ." in making her argument. This is, of course, true. The only decisions which would ever be binding on this Court are decisions from the Third Circuit Court of Appeals and the Supreme Court of the United States, neither of which has issued a decision addressing the mailing vendor theory. Thus, the fact that Plaintiff's decisions are non-binding is not at all a surprise. The decisions in *Khimmat*, *Jackin*, and *Ali*, directly address the merits of this theory, and while all decided on Rule 12 motions, they all found that the consumers had adequately stated claims for relief in those matters based on challenges to the legal theory asserted—the same legal theory being advanced in this case.[13] Here, the parties are in agreement on nearly all of the relevant facts. There is no doubt that Defendant conveyed information about Plaintiff to Hatters, its letter

---

[13] Defendant asserts that in a Rule 12(b)(6) motion, a court is not addressing the merits of a case. This is untrue. A Rule 12(b)(6) motion (or a Rule 12(c) motion) is most often a vehicle for challenging the legal theory being advanced, and that was the purpose of the motions in *Khimmat*, *Jackin*, and *Ali*.

20

vendor, who in turn used that information to send a collection letter to Plaintiff. There is also no dispute that Plaintiff is a "consumer," Defendant is a "debt collector," and that the account at issue is a "debt," as those terms are used in the FDCPA. Thus, the issue currently before the Court is not a *factual* dispute, but rather is merely a *legal* dispute. As a result, the Court has to decide only whether the challenged conduct violates the statute. The thorough discussions provided by the courts in *Khimmat*, *Jackin*, and *Ali* are extremely persuasive, and Defendant's attempt to distinguish those cases based on their different procedural postures is certainly not enough to win the day.

<u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion for summary judgment.

<u>*s/ Brett Freeman*</u>
Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff
FREEMAN LAW
210 Montage Mountain Rd.
Moosic, PA 18507
P: (570) 589-0010
F: (570) 456-5955
brett@freeman.law

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief contains 4,669 words. I have relied upon the word-count

feature of the word-processing program used to prepare the brief.

*<u>s/ Brett Freeman</u>*
Brett Freeman
