UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

**JUSTINE MOORE,**         :

    Plaintiff         :         CIVIL ACTION NO. 21-cv-1724

  v.         :         (JUDGE MANNION)

**MERCHANTS & MEDICAL**
**CREDIT CORPORATION, INC.,**         :

    Defendant         :

## MEMORANDUM

Pending before the court are the cross-motions for summary judgment filed by Plaintiff Justine Moore and Defendant Merchants & Medical Credit Corporation, Inc. (Docs. 20 & 22). Plaintiff originally brought a claim in the Lackawanna County Court of Common Pleas, alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. (Doc. 1-1). Defendant removed the case to this court. (Doc. 1). Plaintiff moves for summary judgment as to liability, and Defendant moves for summary judgment.

A provision of the FDCPA prohibits debt collectors from communicating with most third parties in connection with debt collection, unless the debtor has consented or a court has permitted it. Plaintiff claims that Defendant

violated this provision when it used a mail vendor to send Plaintiff a letter about her debt. But it is unclear how she was really injured by that. And the Constitution does not empower this court to hear a case involving no real injury. Because the court concludes that Plaintiff lacks standing to bring this lawsuit in federal court, as explained below, the parties' motions for summary judgment will be **DENIED**, and the case will be **REMANDED** to state court.

I.     Factual Background[1]

Plaintiff had a Kohl's credit card (the "Account"), which she used for personal, family, or household purposes. (Doc. 21-1 ¶¶2–4). Defendant, a debt collector, sent Plaintiff a letter attempting to collect on the Account. (Doc. 34 ¶¶7–9). The letter was mailed to Plaintiff by a mail vendor, Hatteras, Inc. (Doc. 34 ¶10). Hatteras routinely mails letters for Defendant. (Doc. 34 at 7 ¶1; Doc. 21-3 at 7: 2–8). As part of this routine process, information about Plaintiff was transmitted electronically from Defendant to Hatteras via an encrypted data file. (Doc. 34 ¶11, 7 ¶2). This information included the names

---

[1] Plaintiff submitted a Statement of Undisputed Material Facts. (Doc. 21). Defendant responded to Plaintiff's Statement and submitted a counter-statement of Material Facts. (Doc. 34). Plaintiff responded to Defendant's counter-statement of material facts. (Doc. 37).

of the current and original creditors, the account number, a description of the debt, the debt balance, and the debtor's name and address. (Doc. 34 ¶12).

The letter bore Defendant's logo, address, and phone number, and stated that it was a communication from a debt collector and an attempt to collect a debt. (Doc. 1-1). It also stated the name of the creditor, Capital One, N.A., and the debt balance. (Id.). The letter explained: "Our client has agreed to accept a reduced amount to satisfy this debt. You may take advantage of this offer by paying [a reduced amount] to our office." (Id.). Plaintiff avers that she received the letter and that she never provided Defendant with permission to disclose her information to a third party. (Doc. 21-1 ¶¶3, 8).

## II.     Legal Standard

The federal judicial power extends only to "Cases" and "Controversies," U.S. Const. art. III, §2, and the doctrine of standing confines federal courts to this subject-matter jurisdiction by limiting who can bring suit here. *Spokeo, Inc., v. Robins*, 578 U.S. 330, 338 (2016). Due to this constitutional limitation, federal courts "have an obligation to assure themselves of litigants' standing under Article III." *Wayne Land and Min. Grp.*

- 3 -

*v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quoting *DaimlerChrysler v. Cuno*, 547 U.S. 332, 340 (2006)).

"For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case." *TransUnion, LLC v. Ramirez,* 141 S.Ct. 2190, 2203 (2021). Standing thus requires a showing (i) that the plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

### III.   DISCUSSION

Plaintiff alleges that Defendant violated 15 U.S.C. §1592c(b) by conveying information about her to a third party in connection with the collection of debt and without her consent.[2] (Doc. 1-1 ¶¶26–27). She asks

---

[2] Section 1592c(b) of Title 15 of the United States Code provides:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the creditor.

- 4 -

for statutory damages, costs, and attorney's fees in relief. (Id. ¶27). Regarding what injury she suffered as a result of this violation, the complaint is not explicit. Plaintiff does note that the FDCPA was designed to curb "invasions of individual privacy," (Doc. 1.1 ¶14, quoting 15 U.S.C. §1692(a)), perhaps suggesting that she suffered an invasion of privacy.

This claim meets resistance in standing's first requirement: a concrete injury. A "concrete" injury is one that exists in fact—a "real" injury. *Spokeo*, 578 U.S. at 340. It need not be tangible, however, as "intangible injuries can nevertheless be concrete." *Id.* And although Congress' views may be "instructive" in determining whether a certain harm is sufficient to confer standing, a statutory violation does not itself make an injury concrete. *TransUnion*, 141 S.Ct. at 2204–05 ("Article III standing requires a concrete injury even in the context of a statutory violation."). Even where Congress has created a statutory prohibition and private cause of action, federal courts maintain "their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.* at 2205.

Physical and monetary harms are concrete. *Id.* at 2204. In addition, those intangible harms "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as

reputational harms, disclosure of private information, and intrusion on seclusion, also qualify. *Id.*

Assuming Plaintiff was injured by Defendant's conveyance of information, the closest analog among traditionally recognized torts is, as Plaintiff's complaint suggests, a form of invasion of privacy: the disclosure of private information. This tort has been recognized in Pennsylvania as, per the Restatement, "Publicity Given to Private Life." *Vogel v. W.T. Grant. Co.*, 327 A.2d 133, 135–36 (Pa. 1974) (quoting Restatement (Second) of Torts §652D (Am. L. Inst. Tent. Draft. No. 13, 1967) ("One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy.")). The "crux" of this tort is "publicity." *Vogel*, 327 A.2d at 136 ("Without it there is no actionable wrong."). "[P]ublicity requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Harris v. E. Publ'g Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984) (citing Restatement (Second) of Torts §652D cmt. a (Am. L. Inst. 1977)).

The Supreme Court's analysis in *TransUnion* is instructive. TransUnion, a credit reporting agency, provided a service that placed an alert

on a consumer's credit report if its software indicated that the consumer's name matched that of an individual on a national security threat list. 141 S.Ct. at 2201. Because the software merely compared first and last names, "false positives" resulted. *Id.* Among the class of plaintiffs who sued TransUnion, the majority were consumers whose credit reports had not been disseminated—their files at TransUnion simply contained misleading alerts. *Id.* at 2209.

Although they had alleged violations of the Fair Credit Reporting Act, the Court held that these consumers lacked standing. *Id.* at 2214. The harm they suffered did not bear a close relationship to the comparable tort of defamation because there was no publication. *Id.* at 2210. The Court rejected the argument that the consumers' information had been published internally within TransUnion and to its mailing vendors, because "[m]any American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation … nor have they necessarily recognized disclosures to printing vendors as actionable publications." *Id.* at 2210 n.6. In addition, these consumers lacked evidence that their reports were "actually read and not merely processed." *Id.*

The Eleventh Circuit Court of Appeals has addressed a claim like the one brought here. *See Hunstein v. Preferred Collection & Mgmt. Servs.*, 48

F.4ᵗʰ 1236 (11th Cir. 2022). The plaintiff in *Hunstein* alleged that the defendant had violated §1692c(b) by disclosing his information to a mail vendor. *Id.* at 1240. The court concluded that he had failed to allege a concrete harm, and thus had no standing, because he had not alleged publicity. *Id.* at 1242. It explained that "[p]ublicity requires far more than … just '*any* communication by the defendant to a third person.'" *Id.* at 1246. The distinction between a private and public communication, the court added, "is a qualitative inquiry"; "we ask whether the disclosed information 'reaches, or is sure to reach, the public.'" *Id.* at 1247 (quoting Restatement §652D cmt. a). The complaint did not suggest that the defendant's communication reached, or was sure to reach the public, as it merely "describe[d] a disclosure that reached a single intermediary, which then passed the information back to Hunstein without sharing it more broadly." *Id.* at 1248.³

---

³ The court in *Hunstein* declined to infer from the plaintiff's complaint that the employees of the mailing vendor actually read and considered the information conveyed. 48 F.4th at 1247. It regarded the allegations as showing only that "the disclosure was an electronic transfer between the two companies." *Id.* But the court's reasoning does not appear to be strictly limited to circumstances in which no third-party actually read and considered a plaintiff's information: it further explained that "'it is not an invasion of the right of privacy' to 'communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.'" *Id.* at 1249. In any event, except for asserting so in her brief, (Doc. 36 at 17–18), Plaintiff does not show that any employees of Hatteras actually read her information.

District courts in this circuit have reasoned similarly. *Barclift v. Keystone Credit Servs., LLC*, 585 F.Supp.3d 748, 758 (E.D. Pa. 2022) concluded that a plaintiff alleging a violation identical to that alleged here did not have standing because "there was no publicity." "Even assuming that the mailing vendor read [the plaintiff's] personal information," the court explained, sharing that information with a small group of people does not constitute publicity. *Id.*; *see also Foley v. Medicredit, Inc.*, 2022 WL 3020129, at *3 (D.N.J. 2022) ("[D]issemination to a small group of employees is far from communicating to a large group such that [the plaintiff's] information became public knowledge."); *Rohl v. Pro. Fin. Co.*, 2022 WL 1748244, at *3 (D.N.J. 2022) (same); *Madlinger v. Enhanced Recovery Co.*, 2022 WL 2442430, at *7 (D.N.J. 2022) ("[E]ven were the Court to construe the amended complaint as alleging that a small group of letter vendor employees may have read the collection letter, such a communication would be insufficient.");  The court further concluded that this theory of liability is "not in harmony with the true purpose of the FDCPA," which is "meant to protect the vulnerable from the real harm of abusive, harassing, and deceptive debt collection practices"—not "the imaginary harm proposed by the mailing vendor theory." *Barclift*, 585 F. Supp. 3d. at 759–60.

The court concurs with these decisions.[4] Plaintiff has shown no more than a statutory violation, if anything. There is no mention of an injury, and the disclosure of her information to Hatteras does not constitute one. As discussed above, the traditional tort of disclosure of private information, or publicity given to private life, requires the element of publicity. Just as the infractions in *TransUnion* lacked the publication essential to the tort of defamation, the alleged violation here lacks the publicity essential to this tort. Nothing in the record shows that Plaintiff's information is likely to become public knowledge as a result of its disclosure to Hatteras. Her information was electronically conveyed to Hatteras, which then used it to populate the letter. Even assuming Hatteras' employees read her information, that would not establish publicity, for disclosure to a group of employees routinely

---

[4] It should be noted that *Khimmat v. Welmat, Weinberg & Reis Co.*, 585 F. Supp. 3d 707 (E.D. Pa. 2022), on which Plaintiff relies, allowed a claim like this one to stand against a motion to dismiss. Nevertheless, this decision does not alter the weight of persuasive authority, for two reasons. First, it predates *Hunstein*. Although *Hunstein* is not binding on courts in this circuit, *Khimmat* expressly relied on a prior panel opinion in that case which has now been vacated. 585 F. Supp. 3d at 712. Second, *Khimmat* did not conclude that the plaintiff there had standing; it simply postponed consideration of that issue pending discovery. *Id.* at 714. The court read *TransUnion* as suggesting that "if a letter vendor read, and did not merely process, the information, then a plaintiff might suffer an injury," and inferred from the plaintiff's complaint that the letter vendor had read his information. *Id.*

processing letters on behalf of a debt collector is unlikely to effect a disclosure to the public at large. As publicity, the "crux" of this tort, is missing, Plaintiff has not shown that she suffered a harm with a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S.Ct. at 2213. Therefore, Article III's requirement of a concrete injury is not satisfied, and Plaintiff lacks standing. And since Plaintiff does not have standing, this court does not have subject-matter jurisdiction to address her claim. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

Because this court lacks subject-matter jurisdiction, and because the lawsuit was originally brought in the Lackawanna Court of Common Pleas, the proper disposition is remand to state court. 28 U.S.C. §1447(c); *Johnson v. Patenaude & Felix, A.P.C.*, 2021 WL 3260064, at *3 (M.D. Pa. 2021) ("If we conclude that Plaintiff lacks standing, then we have no subject matter jurisdiction to entertain this case—therefore, the proper remedy must be remand."); *Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("[W]e hold that when a federal court has no jurisdiction of a case removed from state court, it must remand and not dismiss on the ground of futility.").

## IV. CONCLUSION

Having suffered no concrete injury, Plaintiff lacks standing. Absent standing, this lawsuit does not present a "case" or "controversy" under Article III of the Constitution, and the court is therefore without subject-matter jurisdiction. For this reason, the case will be **REMANDED** to the Lackawanna County Court of Common Pleas. The parties' motions for summary judgment, (Docs. 20 & 22), will be **DENIED**. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 25, 2023**
21-1724-01